UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| SUMMERFILED AT SNOWHILL COMMUNITY PARTNERSHIP, LLC | * | Case No.: 14-29290-CAT |
| Debtor | * | Chapter 11 |
| * * * * * * * * | * * * * * | |
| JERALD B. GREENSPAN | * | |
| Plaintiff | * | |
| vs. | * | |
| | | Adversary Proc. No. |
| RAPID FUNDING, LLC<br>5151 WISCONSIN AVE., N.W.<br>SUITE 501<br>WASHINGTON, D.C. 20816 | * | |
| | * | |
| . | * | |
| And | | |
| | * | |
| SNOW HILL LOANS LLC<br>1 SHIPWRIGHT STREET<br>ANNAPOLIS, MD 21401 | * | |
| And | | |
| | * | |
| RODNEY P. HUNT<br>201 CHAIN BRIDGE RD<br>MCLEAN, VA, 22101 | * | |
| | * | |
| And | | |
| MATTHEW J, ODACHOWSKI<br>201 BELT STREET<br>SNOW HILL, MD 21863 | * | |

And
                                                                                             *

HEMINGWAY RPH HOLDINGS, LLC
4938 HAMPDEN LANE
BETHESDA, MD 20814                                       *

        Defendants

    *     *     *     *     *     *     *     *     *     *     *

### Complaint to Determine Secured Status and Priority of Liens

### Introduction

1. This is an action to determine the secured status and priority of liens of the Debtors pursuant to §§ 105(a), 502, 506, 1122 and 1124 of the Bankruptcy Code; 3012 and 7001(2) of the Bankruptcy Rules and Md. Code (2003 Repl. Vol.) § 3-201 of the Real Property Article.

### Jurisdiction and Venue

2. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 11 case under Title 11 and concerns property of the debtor in that case.

3. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

4. This court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code.

5. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core preceding then and in that event the Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

6. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Bankruptcy Code.

### Parties

7. The Plaintiff in this case is Jerald B. Greenspan, an individual creditor in the present Chapter 11 case of Summerfield at Snow Hill Community Partnership, LLC, ("Summerfield") case number 14-29290-CAT.

8. The Defendant, **Rapid Funding, LLC** (hereinafter referred to as "**Rapid"**) is engaged in the business of real estate lending and mortgage servicing with its principal place of business located at 5151 Wisconsin Blvd., Suite 501, Washington, D.C. 20016. Rapid is not recognized in the State of Maryland as a Limited Liability Company. **Rapid** submitted itself to the jurisdiction of this case by filing a claim in this case.

9. The Defendant, **Snow Hill Loans, LLC** (hereinafter referred to as "**Snow"**) is a Limited Liability Company, recognized as such in the State of Maryland, that is engaged in the business of real estate lending and mortgage servicing with its principal place of business located at 1 Shipwright Street, Annapolis, MD 21401. **Snow** submitted itself to the jurisdiction of this case by filing a claim in this case.

10. The Defendant, **Matthew J. Odachowski** (hereinafter referred to as "**Odachowski"**) is a Maryland resident, that is believed to be engaged in his own plumbing company and not in the business of mortgage lending, with his residence at 201 Belt Street, Snow Hill, MD 21863. **Odachowski** submitted himself to the jurisdiction of this case by filing a claim in this case.

11. The Defendant, **Rodney P. Hunt** (hereinafter referred to as "**Hunt**") is a Virginia resident that is engaged in the business of real estate development, investing and lending with his residence at 201 Chain Bridge Rd., McLean, VA 22101.

12. The Defendant, **Hemingway RPH Holdings, LLC,** (hereinafter referred to as **("Hemingway"**) is a Limited Liability Company, recognized as such in the State of Maryland, that is engaged in the business of real estate development with its principal place of business located at 4938 Hampden Lane, Bethesda, MD 20814.

## Factual History and Secured Status of Parties

13. In November, 2009, Jerald ("Jerry") Greenspan, agreed to loan the newly created Summerfield at Snow Hill Community Partnership, LLC, ("Summerfield"), the amount of $250,000.00, primarily to assist with the closing costs required by Summerfield to fund the initial purchase of a number of parcels of the "Summerfield properties". These funds were to be repaid to Greenspan within six (6) months, and upon which loan Summerfield, by Mark Odachowski, as an "Authorized Member," executed a short-term confessed judgment promissory note on behalf of Summerfield and in favor of Greenspan, **dated November 23, 2009**, (the "Greenspan Note," see **Exhibit 1**, annexed hereto). Also executed at that time on behalf of Summerfield, was a Security Agreement in favor of Greenspan and securing the $250,000 loan, also **dated November 23, 2009**, (the "Greenspan Security Agreement," see **Exhibit 2,** annexed hereto), by which Summerfield pledged, *inter alia*, certain timber rights on all of the property described in the schedule of properties attached to the Security Agreement, (and consisting of all properties then owned by Summerfield, i.e., the "Summerfield properties").

14. As further inducement to Greenspan to make this short-term loan, the debt was further *guaranteed* by Rodney P. Hunt. By the terms of the Greenspan Security Agreement noted the Greenspan interest was subordinate to the mortgages to be placed on the property by PNC Bank and Rodney P. Hunt, (the latter being by "Deed of Trust, Assignment and Security Agreement" executed by Summerfield in favor of Rodney P. Hunt, securing the amount of $4,000,000, also **dated November 23, 2009**, and recorded in the Worcester County land records on **December 4, 2009**, at Liber 5395, Folio 067. (PNC is no longer involved in these properties, while Rodney P. Hunt later subordinated his interests to a subsequently executed and filed mortgage in favor of Matthew J. Odachowski, thereby placing Hunt behind both Greenspan and Odachowski with respect to the Summerfield properties, as further discussed *infra*.)

15. The Greenspan Security Agreement, dated **November 23, 2009**, while not immediately recorded, was later 'effectively' recorded by a certain Subordination Agreement, (dated **March 5, 2010** and filed **March 10, 2010**, see below), (the "Greenspan Subordination Agreement"), as requested of Jerald Greenspan by Summerfield and Rapid Funding in relation to refinance of the Summerfield properties with Rapid Funding, LLC (ultimately in place of PNC), and to subordinate Greenspan's interests to Rapid Funding's new "First Trust Loan" secured by the Summerfield properties in the amount of $3,125,000. This Subordination Agreement was executed by Jerald Greenspan in favor of Rapid Funding, dated March 5, 2010, and filed with the Worcester County land records on **March 10, 2010**, under Liber 5442, Folio 281, (the "Greenspan Subordination Agreement" see **Exhibit 3,** annexed hereto).

16. On the same date of **March 10, 2010,** but filed immediately after the Greenspan Subordination Agreement, (at Liber 5442, Folio 295), a further Subordination Agreement was executed by Matthew J. Odachowski in favor of Rapid Funding, with respect to its unfiled mortgage granted by Summerfield to Odachowski, dated **January 20, 2010**, (after execution of the "Greenspan Note" and "Greenspan Security Agreement"), which mortgage in favor of Matthew J. Odachowski had been executed by Mark R. Odachowski as "Member/Director" and Rick Cantor, as "Member" on behalf of Summerfield.)[1] (See the Odachowski Subordination Agreement, **Exhibit 4**, annexed hereto.) That mortgage was later filed with the Worcester County land records on **April 5, 2010**, (at Liber 5454, Folio 312). Similarly, Rodney Hunt executed a Subordination Agreement in favor of Rapid Funding, also dated **March 5, 2010**, and recorded in the Worcester County land records on **March 10, 2010**, (at Liber 5442, Folio 267), and subordinating Hunt's November 23, 2009 Deed of Trust to Rapid Funding's "First Trust Loan" in the amount of $3,125,000. (See "Hunt Subordination Agreement" at **Exhibit 5**, annexed hereto.)

17. Thereafter, and for reasons best known to those parties, Rodney P. Hunt executed a

---

[1] The Trustee on behalf of Rapid Funding has also previously questioned the 'bona-fide' nature of the Odachowski mortgage, although it is believed that Rapid Funding has since entered into some type of agreement relating to this matter, the full contents of which are unknown, but which may have changed Rapid Funding's assertions in this matter. Greenspan asserts that the Odachowski lien would be junior to Greenspan's lien in any event.

further Subordination Agreement in favor of Matthew J. Odachowski, with respect to Odachowski's January 20, 2010 mortgage, (filed April 5, 2010), which further Subordination Agreement, **dated March 29, 2013**, was filed in the land records for Worcester County on **April 1, 2013.** (See **Exhibit 6**, annexed hereto.) This subordination on the part of Rodney P. Hunt, placing his interests behind the Odachowski mortgage, also effectively placed such interests behind the Greenspan secured lien, which was *ahead* of the Odachowski lien.[2] These matters are further discussed in the Legal Argument, *infra*.

18. As further relevant to this Motion and the instant proceeding, Rapid Funding relies upon a certain Indemnity Deed of Trust ("IDOT") signed on behalf of Summerfield and **dated July 26, 2010**, and as recorded on **July 28, 2010,** under Liber 5514, Folio 362; (see the "IDOT" **Exhibit 7**), further securing a loan made to Hemingway RPH Holdings, LLC, in the amount of $1,750,000. In terms of lien priorities, Rapid also relies upon a certain Subordination Agreement, **dated July 26, 2010**, (and recorded on **July 28, 2010**, at Liber 5514 Folio 433), allegedly signed by Jerald Greenspan, who, although not recalling signing this document, acknowledges that it is his signature, although the date of signing by Greenspan on the filed document remains blank. (See "certain Subordination Agreement" **Exhibit 8**, annexed hereto.) A further Subordination Agreement was also allegedly signed by Rodney P. Hunt, also dated **July 26, 2010** (and recorded on **July 28, 2010**, at Liber 5514, Folio 417).

19. As may also be relevant to these proceedings, Jerald Greenspan's lien in accordance the Greenspan Note (**Exhibit 1**), and as secured by the Greenspan Security Agreement (**Exhibit 2**), has since been converted to judgment and the value of such lien established for the purposes herein. After receiving no payments on the loan for over three years from either Summerfield or Mr. Hunt (as Guarantor), Greenspan proceeded under the confessed judgment provisions in the Note before the Circuit Court of Montgomery County, Maryland, under Case No. 389387-V, and Judgment was thereupon entered against Summerfield (and Hunt, as Guarantor), on April 17, 2014, in the amount of $500,809.50, plus a further period of per diem interest, attorney's fees, costs, and post-judgment interest at the lawful rate until duly paid. The judgment was further enrolled in the Worcester County Circuit Court, under Case No. 23-C-14-001138 OJ, on September 4, 2014, in the specific amounts and terms of $500,809.50, together with per diem interest of $116.44 from April 5, 2014 through the date of judgment; attorney's fees of $6,846.90; costs; and post-judgment interest to run at the lawful rate of 10% per annum until duly paid. (See Notice of Recorded Judgment, Circuit Court for Worcester County, Issued under the above Case Number on 09/04/14, Greenspan judgment "**Exhibit 9"**, annexed to.) Greenspan's lien, as converted to judgment, is now in the amount of $545,289.58, (inclusive of interest at post-judgment interest of 10% per annum, through April 22, 2015, and as

---

[2] Mr. Greenspan's lien in accordance the Greenspan Note, as secured by the Summerfield properties, has since been converted to judgment and the value of such lien established for the purposes herein. After receiving no payments on the loan for over three years from either Summerfield or Mr. Hunt (as Guarantor), Greenspan proceeded under the confessed judgment provisions in the Note before the Circuit Court of Montgomery County, Maryland, under Case No. 389387-V, and Judgment was thereupon entered against Summerfield (and Hunt, as Guarantor), on April 17, 2014, in the amount of $500,809.50, plus per diem interest of $116.44 from April 5, 2014 through the date of judgment (April 17, 2014); attorney's fees of $6,846.90; costs; and post-judgment interest to run at the lawful rate of 10% per annum until duly paid. The judgment was further enrolled in the Worcester County Circuit Court, under Case No. 23-C-14-001138 OJ, on September 4, 2014, in the same amounts and terms. To date, no payments have been made on the Judgment, nor were any payments ever made by Summerfield (or Hunt as Guarantor) on the Greenspan Note.

continuing to accrue at the rate of 10% per annum, $116.44 per diem, until duly paid), plus attorney's fees of $6,846.90, for a total of $552,136.48, (with Greenspan further reserving his rights to claim additional attorney's fees and costs in protection of his lien).  To date, no payments have been made on the Judgment, nor were any payments ever made by Summerfield (or Hunt as Guarantor) on the Greenspan Note.

20. Summerfield is a Single Asset Real Estate Chapter 11.

**Wrongful Application of Proceeds from Sale of Portion of Summerfield Properties**

21. As recently learned by Jerald Greenspan and his counsel largely as a result of review of pleading, motions and exhibits previously filed in foreclosure proceedings instituted in state court (presently stayed) it appears that various agreements were made and actions taken by and between Rapid Funding, Summerfield, Hunt and Odachowski, without any participation or consent of Jerald Greenspan, whose interests as a subordinate lender were significantly and improperly compromised as a result. Most significantly, these agreements apparently led to sale of *substantial portions of the Summerfield properties*, which proceeds were then divided up by and between those parties, (each who filed Partial Releases with respect to the Summerfield properties sold; see group **Exhibit 10**), *but all to the exclusion of Mr. Greenspan who never agreed to, consented to nor signed any releases of his secured interests with respect to these secured properties.*

22. As also learned by Greenspan and his counsel there appears to have been a sale of a substantial portion of the Summerfield properties for the amount of $3,300,000, sometime following April, 2013, with certain sales continuing into 2014.  It further appears that only a portion of such proceeds went to pay down the Summerfield debt to Rapid Funding, with substantial amounts of being otherwise paid out directly and personally to Rodney P. Hunt and Matthew Odachowski, to third-party creditors of same, and/or for other purposes *as exclusively determined by these parties*, *but not for the purposes of improving the collateral property, nor in paying down the "First Trust Loan"* of Rapid Funding, which otherwise stood just before the Greenspan lien in order of priority, (see above, and as further discussed below).  Indeed, one can find in the land records of Worcester County, the various Deed(s) of Partial Releases of such Summerfield properties sold, as executed by each of the above parties as secured lenders, *but not by Jerald Greenspan.*  More to the point, review of an exhibit previously submitted by Rapid Funding in the state court proceedings that is entitled "Forbearance Consideration Accounting," (see **Exhibit 11**, annexed hereto), one can see (as Rapid Funding has itself alleged in motions before that court) over $1,000,000 having been paid out *directly* to individuals or related entities, and not in reduction of its own "First Trust Loan".  Indeed, in such state court proceedings, Rapid Funding stated, that "[m]ost importantly, the undersigned represented to the Court that Lender had paid approximately $1,000,000" to RPH Holdings LLC (a company substantially owned by Rodney Hunt), Summerfield, Matthew Odachowski, Rodney Hunt, RPH Holdings' counsel, "and to others in exchange for the execution of the two Forbearance Agreements." (See "Supplemental Opposition by Plaintiff Trustee to Motion of Matthew J. Odachowski to Stay Foreclose Sale" in Worcester County Circuit Court Case No. 23-C-14-000773, at p. 1.) While this number has at times been referenced as $1 million to $1.5 million, the "Forbearance Consideration Accounting" submitted by Rapid Funding, (**Exhibit 11**), shows what Rapid Funding describes by its own accounting as "Total Consideration Paid," and in the precise amount of $1,479,695.03.  As this Court will see, Jerald

Greenspan participated in none of this, signed no such agreements or modifications, and received none of the proceeds of any such sale, even while it appears that $3.3 million worth of the Summerfield properties forming collateral for his secured interests were sold without his release or consent, and in improper derogation of his interests.

23. Indeed, had these substantial parcels of the Summerfield properties been sold and the proceeds applied to pay down Rapid Funding's loan forming its first lien on the properties, there could be little argument that Greenspan's interests were wrongly or unfairly compromised, or that he had any right or priority to proceeds of Summerfield properties above Rapid Funding. However, such is not the case here, as Rapid Funding's own "Forbearance Consideration Accounting" shows, with substantial disposition of such proceeds for purposes other than paying down Rapid Funding's first lien, including: a $715,032.01 cash payment directly to Mr. Hunt; a $23,000 cash payment to Matthew J. Odachowski; a $3,000 payment to Mark Odachowski; a $155,290.00 cash payment to Hemingway RPH Holdings; and additional $179,487.00 cash payment to Rodney P. Hunt; a cash payment of $56,557.63 referenced only as "to Borrower"; with various payments of substantial sums to various of the attorneys involved in the six (6) transactions referenced in this "Forbearance Consideration Accounting." (See **Exhibit 11**, annexed hereto)  Indeed, the only amounts paid from this fund of $1,479,685.03 with which Mr. Greenspan cannot reasonably complain, would be the approximate amount of $142,000 paid toward outstanding real estate taxes on the properties, even though these were apparently paid only so these properties could be sold. (This also assumes that the balance of what is believed to have been the $3.3 million in sales proceeds went toward paying down the Rapid Funding first lien – facts not yet entirely clear.)  Accordingly, if **even a portion** of the above amount of **$1,479,685.03** were applied to Rapid Funding's first lien, in view of the fact that Rapid Funding claims it is owed by Summerfield on its "First Trust Loan," as of September 1, 2014, the amount of $189,747.25 in principal, $68,209.84 in late charges, and $179,504.38 in attorney's fees - **all for a total claimed owed of $437,461.48 as of such date**, such amounts would have easily paid Rapid in full (with much of the late charges and attorney's fees never accruing), if such significant funds had not been improperly diverted and misapplied as a result of the significant Summerfield properties and collateral sold off in 2013 to 2014. As stated, none of these proceeds went to Jerald Greenspan in any respect, and regarding which transactions Jerald Greenspan *never signed any consents or release(s)* permitting such waste, disposal and sale of the Summerfield properties constituting collateral for his secured loan.

24. As further relevant to these proceedings, following institution of these proceedings in bankruptcy, Rapid Funding assigned to Snow Hill Loans, LLC, (believed to have the same principals as Rapid Funding), a certain Indemnity Deed of Trust ("IDOT") ("**Exhibit**" **7**) signed on behalf of Summerfield and **dated July 26, 2010**, and as recorded on **July 28, 2010,** (under 5514, Folio 362), further securing an additional loan made to Hemingway RPH Holdings, LLC, in the amount of $1,750,000. In terms of lien priorities, Snow Hill, as assignee of Rapid Funding, now also makes claim as a creditor in these proceedings, and here relies upon a certain Subordination Agreement, **dated July 26, 2010**, (and recorded on **July 28, 2010**, at Liber 5514 Folio 433), allegedly signed by Jerald Greenspan, who, although not recalling signing this document, acknowledges that it is his signature, although the date of signing by Greenspan on the filed document remains blank. (See **Exhibit 8,** attached.)  It is also noted, that here again, Greenspan's security interests in the Summerfield properties were reflected by an additional duly recorded instrument, as referenced above.

25. In this regard, while Rapid Funding and Snow Hill (as the former's assignee) may now seek to conflate Rapid Funding's "First Trust Loan" (discussed above) with Snow Hill's further claim to proceeds of the Summerfield collateral under the IDOT, and indeed Greenspan makes various similar arguments concerning Snow Hill's present claims as assignee-creditor under the IDOT, as with Rapid Funding's present claims, (i.e., with respect to sales of collateral without consent of Greenspan, misapplication of proceeds, extensive fees and charges attributed to these loans by further agreements in which Greenspan play no part, and other allegations), nonetheless, certain other issues are different -- most notably, the differing balances claimed due under the IDOT (with respect to the Hemingway loan) and under Rapid Funding's original First Trust Loan, respectively. That is, if indeed any such claims of balances due by either of these creditors may now be considered superior than the Greenspan lien as collateralized by the Summerfield properties, which this Complaint respectfully alleges they should not.

26. For instance, just as it is alleged that $3.3 million worth of the Summerfield properties forming collateral for the Greenspan loan were sold off without Greenspan's release or consent, and with proceeds of same misapplied in wrongful derogation of his interests, so it also appears that at least $1.82 million worth of Hemingway properties, as secured by the Summerfield IDOT, to which Jerald Greenspan subordinated his interests, were also sold off, but which funds also appear to have been misapplied rather than going to properly paying down the Hemingway loan upon which Snow Hill now makes claim pursuant to the Summerfield IDOT, as assignee of Rapid Funding, (although each is entity believed to have the same principals).

27. Accordingly, while it has been noted above that the balance on Rapid Funding's "First Trust Loan" and, indeed, Rapid Funding's priority claims over Greenspan pursuant to the March 5, 2010 Greenspan Subordination Agreement, must now be found as either non-existent (due to misapplication of proceeds of Summerfield sales) or invalid (as sold off without Greenspan's consent and in violation of both his security interests and the subordination agreement of March 5, 2010), similar claims are now made herein with respect to the Snow Hill claim to the Summerfield properties or the proceeds thereof, as previously securing the Hemingway loan, and with respect to the sale of prior Hemingway collateral and alleged misapplication of its proceeds, and in further misplaced reliance upon the alleged subordination agreement signed by Greenspan, of July 26, 2010, and recorded July 28, 2010, with respect to the IDOT now relied upon by Snow Hill.

28. Additionally, as pointed out with respect to the Rapid's "First Trust Loan," where considerable late fees and attorney's fees would never have been generated had balances been reduced by proper application of proceeds of the sale of Summerfield properties in 2013 to 2014, (and sold without Greenspan consent), so too it is believed to be the case with respect to the prior sale of Hemingway properties and the misapplication of the proceeds thereof, rather than in reduction of claims now made under the IDOT on the Summerfield properties securing the Hemingway loan.

29. Finally, it is noted, as also subsequently learned by Greenspan and his counsel, that with respect to both the Rapid's "First Trust Loan" and the Hemingway loan secured by the IDOT on the Summerfield properties, (now held by Snow Hill), that exorbitant default rates of interest have been charged for a considerable periods of time with respect to each such loan, believed to be at rates of

eighteen percent (18%) and twenty percent (20%), respectively, through certain "forbearance agreements" involving each of the parties referenced herein, *but of which Greenspan was never aware and was never a party to any such agreements,* all in further and improper derogation of his secured interests in the Summerfield properties, and notwithstanding any subordination agreements which he may have earlier signed for other purposes. 3

30. Indeed, it appears that each of the parties *knew* that Greenspan's agreements, consents and releases were required in these matters. For in or about April, 2013, a request was made of Mr. Greenspan that he sign a "Deed of Partial Release," (See Unsigned document, **Exhibit 12**, annexed hereto), apparently with respect to the above-referenced transactions contemplated. Also, at or about such time Mr. Greenspan, was provided with a draft "Agreement of Sale," showing a contemplated $3.3 million purchase price for several of the Summerfield properties. (See Unsigned document, as **Exhibit 13** annexed hereto). Upon inquiry by Mr. Greenspan and as to what, if anything, would be paid on his own outstanding and severely delinquent loan held on Summerfield, (for which he had and has never been paid anything), there we no satisfactory answers, or indeed any answers in such respect. Thereupon, he declined to sign such "Deed of Partial Release" as requested of him. (See Unsigned document, **Exhibit 12**.) *Nonetheless, Rapid Funding and the other parties proceeded without him, all in derogation and violation of his own secured interests in the Summerfield properties.*

31. Accordingly, it is respectfully submitted, that Jerald Greenspan is, both at law and in equity, entitled to receive the first proceeds obtained on foreclosure and sale of the remaining Summerfield properties.

<u>LEGAL ARGUMENT</u>

<u>ESTABLISHMENT OF PRIORITIES AMONG JUNIOR LIENHOLDERS</u>

32. On March 19, 2015, Summerfield's counsel filed on their behalf a Chapter 11 Plan of Reorganization (the "Plan"). In order for all secured claim holders claims to be properly considered by this Court when considering any and all oppositions to the Plan, it is necessary that the Court first determine the secured status of Greenspan and the order of priority of all secured parties, in order to ensure that none of the claims are prejudiced prior to ruling on the Plan. The Plan contemplates paying secured creditors in Article III, class's II, III, IV, and V, respectfully, but not VI (Greenspan). Class VI, is stylized as Disputed Claim of Gerald B. Greenspan. The debtor asserts in their Plan, that Greenspan has a mere under secured Judgment Lien against the Summerfield Property and is therefore unsecured. Greenspan disagrees.

33. Jerald Greenspan's Security Agreement, dated November 23, 2009, was a valid and enforceable as of its effective date (the date of execution) as against the borrower, Summerfield at Snow Hill Community Partnership, LLC. Under the Maryland Code, and as applied against all other persons and/or parties interested in the within proceedings, the interest was valid and enforceable as of the same

---

3   While the Worcester Circuit Court held such forbearance agreements valid, including the default interest rates and other terms contained therein, it did so on, *contract principles,* those very parties complaining of its terms having been participants to those agreements. Jerald Greenspan was never party to any such agreements, and indeed, he appeared by counsel after such motions had been briefed and argued.

date. A "Deed" is defined as including "any deed, grant, mortgage, deed of trust, lease assignment, and release, pertaining to land or property or any interest therein appurtenant thereto, including an interest in rents and profits from rents." Md. Code. Ann., [Real Property] § 1-101(c). The Code further defines a "Grant" as to "include conveyance, assignment, and transfer." *Id.* § 1-101(c). Accordingly, there is little question but that Jerald Greenspan's security interest here qualifies as a "deed" or "grant" with respect to the Summerfield properties as, indeed, granted to him in consideration of his $250,000 loan for purchase of these properties, and treated as such from the time of such purchases of the Summerfield properties.

34. Therefore, as a qualifying "deed" or "grant", Greenspan's interest in the Summerfield Property obtains priority pursuant to the Real Property Article of the Maryland Code. Its effective date "is the date of delivery, and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later." *Id.* § 3-201. In this case, the effective date is **November 23, 2009**, *which date is prior to* the mortgage granted Matthew Odachowski by Summerfield, dated **January 20, 2010**.

35. Once recorded, such deed is enforceable from its effective date "as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice." *Id.* § 3-201. As against third parties executing and/or granting subsequent deeds, the original deed is enforceable "from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date unless the grantee of the subsequent deed" took in good faith; without constructive notice; for good and valuable consideration, *and recorded first*. *Id.* § 3-203.

36. The recording of the Greenspan Subordination Agreement on **March 10, 2010**, by reference to the prior-in-time Greenspan Security Agreement was an effective recording of such Security Agreement on that date. Pursuant to § 3-203, this established an effective date of **November 23, 2009** as against third parties with subsequent deeds accepted in bad faith; with constructive notice of the Greenspan deed; without good and valuable consideration; **or** recorded subsequent to **March 10, 2010**. This establishes the Greenspan interest as *senior* to the Odachowski mortgage, which was executed on **January 20, 2010**, and which was not recorded until **April 5, 2010**, well after the Greenspan interest had already been recorded (though, by similar argument, was also "effectively" recorded on **March 10, 2010** by filing of the Odachowski Subordination Agreement, (albeit just after the Greenspan Subordination Agreement was also recorded just prior to Odachowski Subordination Agreement). By such date, and even before, Odachowski already had both constructive and actual notice of Mr. Greenspan's security interest. Therefore the Greenspan security interest takes priority over the Odachowski mortgage as being first in time and even as first recorded. *Id*.

37. All the parties have taken positions consistent with the presumption of both the validity of the Greenspan security interest as well as the establishment of its effective date of **November 23, 2009** based on its recordation by reference in the subordination agreement that was recorded on **March 10, 2010**, and since that date, all parties have treated the document as recorded and/or otherwise acknowledged that the Greenspan interest was recorded as of such date. Indeed, as previously noted by the Trustee for Rapid Funding in the state court proceedings, ("As a review of the recording dates and data suggest, as between Odachowski and Greenspan, the Odachowski Mortgage appears to be behind

10

and subordinate in lien position to the Greenspan Agreement."). "Opposition by Plaintiff Trustee to Emergency Motion of Matthew J. Odachowski to Stay Foreclosure Sale," Worcester County Circuit Court, Case No. 23-C-14-000773 (Memorandum), at p.4 n.1; (further referencing the recording of the March 5, 2010 Greenspan Subordination Agreement "pursuant to which the Greenspan Agreement was recorded (or its existence made of record)."; I*d*. As also noted in the Plaintiff Trustee's Opposition Memo , (on behalf of Rapid) in that proceeding, I*d.,* Greenspan's Subordination Agreement was filed first (Liber 5442, Folio 281 vs. Liber 5442, Folio 295), and the underlying security agreement was executed prior to the Odachowski mortgage (**November 23, 2009 vs. January 20, 2010**). The Odachowski mortgage was later recorded on **April 5, 2010**, though this was not necessary to establish its effective date of **January 20, 2010**, since the filing of the Odachowski Subordination Agreement on **March 10, 2010** was also sufficient to establish both the record date and effective date.

38. Under the same provisions of the Real Property Article, the Rodney Hunt Deed of Trust dated **November 23, 2009** and recorded **December 4, 2009** would take priority as against the Greenspan security interest, (and as the Greenspan Security Agreement, when executed, explicitly stated it would), by virtue of its being recorded prior to the recorded reference to the Greenspan interest on **March 10, 2010** (and establishing the recording date of same). However, Mr. Hunt subsequently executed a further Subordination Agreement, this time in favor of Matthew J. Odachowski, on **March 29, 2013**, and recorded on **April 1, 2013,** subordinating Hunt's November 2009 Deed of Trust to the Odachowski January 20, 2010 mortgage. The Odachowski mortgage thereby took priority over the Hunt deed of trust. Therefore, because Hunt has subordinated his deed of trust to the Odachowski mortgage, and the Greenspan security interest maintains priority over the Odachowski mortgage, Hunt has effectively and transitively placed his interest in the Summerfield Property behind Greenspan's interest, and moved Greenspan's interest into second place, behind primary lien holder Rapid Funding. Hunt could not subordinate Greenspan's security interest to another lender by executing an agreement subordinating solely his own interest, especially when done without Greenspan's consent and explicit written agreement.

### IMPROPER DISPOSITION OF FUNDS UPON SALE OF SUMMERFIELD PROPERTIES SERVING AS COLLATERAL FOR THE GREENSPAN AND OTHER SECURED LOANS

39. By the Greenspan Subordination Agreement, in favor of Rapid Funding's "First Trust Loan", Jerald Greenspan did not agree to subordinate his interest to cash payouts to persons involved in the sale of collateralized property (without his consent) in order to facilitate a forbearance agreement involving Rapid Funding and other parties, and to which he was not a part. It certainly did not contemplate or permit, sale of substantial portions of the collateral without application of such proceeds to secured loans in proper order of their priority. The payouts upon sale of the Summerfield properties here, whether permitted as inducements by Rapid Funding to Mr. Hunt and Mr. Odachowski in these parties' complicated relationships, to pay for services of various attorneys, to pay third-party creditors of these or related parties for pre-existing debts, or for other reasons not apparent, in any event, they do not appear to have been used for *"pre-development, development, construction and/or similar expenses for or relating to the Mortgaged Property,"* as required by the subrogation agreement signed by Jerald Greenspan (see Greenspan Subordination Agreement, Exhibit 3, p. 2), or indeed, having any direct relationship to the Mortgaged Property, (but for use of some portion of the funds in payment of

11

outstanding real estate taxes, paid in order to then sell the properties). Subordination agreements limiting the subordination of the lender's interest to loans for certain and specific purposes are "subject to the normal rules of contract construction." *See Hyatt v. Maryland Federal Savings and Loan Assoc.*, 42 Md. App. 623, 630 (1979).

40. Where the agreement limits subordination to subsequent loans restricted to a particular purpose, the subordination agreement is not enforceable against the initial lender when the subsequent loans (or funds received which may reduce the indebtedness) do not comply with the stated purpose of such subordination agreement. *Id*. While the burden on a lender seeking to defeat the priority of later liens based on a violation of a subordination agreement's specific restrictions is significant, any presumption that later loans are made for the specified purposes is rebutted "with evidence of diversion and collusion" between the mortgagor and subsequent lieneor. *Id*. at 630-31; *Kennedy v. Betts*, 33 Md. App. 258, 262-63 (1976). Here the terms of the subordination agreement signed by Jerald Greenspan was exceeded, and, indeed, breached, while Mr. Greenspan's interests in the collateral was also otherwise wrongfully impaired, wasted and dissipated.

41. In this case, significant evidence exists of the diversion of loan proceeds on the Summerfield Property for purposes to which Mr. Greenspan had not subordinated his security interests. Therefore, pursuant to Maryland law, as set forth in *Hyatt*, *Kennedy, supra*, the priority of the portion of the 'forbearance consideration' not applied to the "funding of pre-development, development, construction and/or similar expenses for or relating to the Mortgaged Property," should be defeated with respect to the Greenspan Security Agreement and the Greenspan Subordination Agreement previously executed in favor of Rapid Funding.

42. For these and other reasons present here, as concerns the Greenspan lien, should Rapid Funding be determined to have been involved with diversion or misapplication of funds from sale of Summerfield properties serving as collateral for the Greenspan loan as well as its own, and even proceeds of sales of Hemingway properties not properly applied to pay down obligations secured by the IDOT, under which IDOT Defendant Snow Hill (as assignee of Rapid) now pursues its own claim, all as alleged herein then all such amounts found so diverted or misapplied should be considered in *reduction* of Rapid Funding's lien, *vis a vis* the Greenspan secured interest which is submitted to otherwise stand in second place. The same is true with respect to Snow Hill's claims under the IDOT as it pursues as assignee of Rapid of such interests. As it is believed such amounts diverted and misapplied clearly well exceed those amounts now properly claimed by Rapid Funding on its first lien with respect to the Summerfield properties, it is respectfully submitted that this Court should properly hold Jerald Greenspan entitled to receive the *first funds* received upon foreclosure and sale of the remaining Summerfield properties in reduction of his own secured loan issued to Summerfield on or about November 23, 2009, up to amounts now converted to judgment before the Circuit Court of Montgomery County and as enrolled and entered in the Circuit Court for Worcester County.

## SNOW HILL IDOT CLAIM

43. As may be relevant to these proceedings, in a line of Maryland cases, (often citing holdings of the U.S. Supreme Court), the Maryland courts have further articulated and expanded upon the meaning of "interests" or "protected property interests" under the notice and other foreclosure rules and statutes. In *Island Financial, Inc. v. Ballman*, 92 Md. App. 125, 136 (1992), the Court of Special Appeals noted: "Constitutional due process protection does not exist only for those who follow the notice statute but encompasses all interests that may be affected by state action." *Island Financial, Inc. v. Ballman*, 92 Md. App. 125, 136 (1992). In *Knapp v. Smethurst*, the court further held that parties can hold an "interest" in foreclosure proceedings even if they have no interest in the actual property being foreclosed upon, as long as the effect of the proceedings would be to defeat their rights in *some* property. 139 Md. App. 676, 713 (2001) ("In the unusual context of this case, we conclude that appellants had a legally protected property interest in the 1992 foreclosure proceedings, even though their particular lots were omitted from that foreclosure action, and they had no ownership interest in the property that was actually foreclosed."). In *Redland Genstar v. Mahase*, 155 Md. App. 72, 80 (2004), further discussing *Knapp v. Smethurst*, the Maryland Court of Special Appeals wrote:

> "In *Knapp*, we concluded that, despite having no ownership interest in the property that was foreclosed upon, ***because the fate of appellants' rights in property owned by them hinged on the foreclosure sale,*** due process required that they were entitled to notice of the proceedings and an opportunity to be heard. Id. at 715. ***Knapp was an unusual situation because appellants' property served as collateral for the secured loan that was foreclosed.***"

(*Emph. added*.) This, of course, is precisely the present situation, where the Summerfield properties, in which Jerald Greenspan holds a lien interest, has been pledged as further collateral for the Hemingway loan by the Summerfield IDOT upon which the lender's assignee (Snow Hill) now seeks to foreclose.

44. Accordingly, Jerald B. Greenspan clearly has the necessary "interest" and standing to bring this complaint as against both Rapid Funding, with respect to its claims under its "First Trust Loan" and Snow Hill, as assignee of Rapid Funding based on the Summerfield IDOT previously securing Rapid Funding's loan to Hemingway RPH Holdings, LLC.

45. See Exhibit list summary.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court;

a. That the Court enter an Order stating that the lien of Jerald B. Greenspan is now entitled, both as a matter of priority and right, to the first funds of any proceeds derived from the sale of any of the Summerfield properties, up to the amount of his lien, as since converted to judgment; with all other liens, to the extent they are found to continue to be valid junior liens to that held by Jerald B. Greenspan.

b. That the Court award Plaintiff actual damages and reasonable attorney fees.

    c.    That the Plaintiff has such other and further relief as the Court may deem just and proper.

Date: <u>Thursday, April 23, 2015</u>

<u>/s/ Robert N. Grossbart, Esquire</u>
Robert N. Grossbart, Esquire (04116)
Grossbart, Portney & Rosenberg, P.A.
Blaustein Building, Suite 1214
One North Charles Street
Baltimore, Maryland 21201
(410) 837-0590
(410) 837-0085 (FAX)
Email: Robert@grossbartlaw.com
Attorney for Jerald B. Greenspan

<u>/s/ Alan B. Fischler, Esquire</u>
Alan B. Fischler, Esquire (427362)
LAW OFFICES OF
ALAN B. FISCHLER, LLC
Bethesda Office Center
4520 East West Highway
Suite 700
Bethesda, Maryland 20814
(301) 907-7272
alan@fischlerlaw.com
Attorney for Jerald B. Greenspan,

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on <u>April 23, 2015</u>, a copy of the foregoing Complaint to Determine Secured Status and Priority of Liens was mailed first class mail, postage prepaid or delivered via CM/ECF to the following:

Office of the US Trustee
6305 Ivy lane
Suite 600
Greenbelt, MD 20770

**Counsel for Debtor**
Merrill Cohen
Augustus T. Curtis

Cohen, Baldinger, & Greenfeld, LLC
2600 Tower Oaks Blvd
Suite 103
Rockville, MD 20852

**Counsel for Rapid Funding, LLC** and
**Snow Hill Loans**
Gary K. Bahena, Esq.
Bahena & Associates PLLC
1 Shipwright Street
Annapolis, MD 21401

**Counsel for Defendant Rodney P. Hunt**
Robert D. Roseman, Esq.
Robert D. Roseman, P.C.
9720 Beman Woods Way
Potomac, MD 20854

**Counsel for Matthew J. Odachowski**
John B. Robins, IV
Robins &. Robins, P.A.
P.O. Box 506
Salisbury, MD 21803

Hemingway RPH Holdings, LLC
4938 Hampden Lane
Bethesda, MD 20814

Richard Cantor
311 Oak Knoll Terrace
Rockville, Md 20851
Resident Agent of RPH

                                              /s/ Robert N. Grossbart, Esquire
                                              Robert N. Grossbart, Esq. (04116)


                                              /s/ Alan B. Fischler, Esquire
                                              Alan B. Fischler, Esq. (427362)